Mr. Whitson. Thank you, Your Honor. May it please the Court, Keith Whitson of Schneider, Harrison, Siegel, and Lewis, on behalf of Petitioner Sina Sunday, I would like to reserve two minutes for rebuttal. That request will be granted. Thank you. On the one hand, we have the failure to appear in court, which resulted in a $500 fine and a conditional discharge. Under New York law, the governing jurisdiction, a conditional discharge is used when, quote, neither the public interest nor the ends of justice would be served by a sentence of imprisonment, unquote. Mr. Sunday paid the fine, appeared at later court proceedings, and was not detained until several years later. On the other hand, we have removal and a permanent bar to reentry. A permanent separation from the only home he has known for the past 20 years, from his longtime fiancée and three children, all of whom are U.S. citizens. The record establishes a profound impact on Mr. Sunday and his family. For one child, he's the only remaining parent. For the other two, he's the principal, caregiver, and means of support. And with the permanent reentry bar, this sentence will never end. It seems like a harsh result, but I mean, don't you have something of an uphill battle with the way our case laws go on, the Eyde case and other cases, in terms of his ability to make this type of challenge? So that really boils down to the central question in this case, Your Honor, and that is whether this is punishment. Because as you reference, the cases back from 1893 and that time period say that deportation at that time was not punishment. But removal today is the result of a criminal conviction. In fact, those very cases distinguished the type of situation we have here, where they called it transportation at the time, where there was a deportation as a direct result of a criminal conviction. So even those cases back in 1893 and the Bugacevich case in 1913, they actually distinguished what we have here today. And when we go through the various procedures, the tests that we have to determine what is a punishment, remember that test has also changed as we've learned more as a country. The test we utilize today in this court in Artway used a number of different Supreme Court tests to fashion a multi-factor test. And if we look at that test, I believe that removal unquestionably qualifies as punishment under that test. Well, this is something pretty unique you're suggesting. I don't think there's a particular case that agrees with you, but you're looking to venture out to something kind of new, right? Well, there's no case that places that analysis in the context of immigration proceedings, Your Honor. But this is a natural result of all the other cases that deal with civil proceedings in general. And I'm not the first person to come up with this argument either. There's plenty of literature that we've cited in our briefs. Removal has traditionally been a civil proceeding. True, Your Honor. Let me say that the proportionality argument is the central argument in this case. Isn't a key question in this case, if not even a more important question for you, is whether D3A of 1182 under that section of the statute, an immigration judge can decide whether or not there will be a waiver from you to visa. Absolutely. So whether D3A is trumped by 14B. Absolutely. That is an entirely separate. Because you've lost that argument before. We've lost it before the BIA, the immigration judge, yes. You've lost it. But if you win that argument, you have a chance to go to the immigration judge now. If we were to the Seventh Circuit and say, you do have the authority to rule on a waiver application under three, right? Absolutely. And that would get us before the immigration judge to use her discretion in deciding whether to grant the waiver. And the only reason it was denied here, the reason it was denied was because it was a simple, I don't have the authority and BIA agreed. Correct. Correct. And we believe that the statute is very clear. The statute may be clear, but the Seventh Circuit did a terrific opinion, as I see it. And actually the clarity of the statute goes hand in hand with that Seventh Circuit opinion. That's right. And the Seventh Circuit found that the immigration judge would have jurisdiction. Right. So on the one hand, an easy and narrow way of resolving this case is to not address the proportionality issue at all. And just say that the immigration judge did have the authority and should analyze whether a waiver of an admissibility... Well, we've got to avoid unnecessary constitutional issues if we can. That's true, Your Honor. But if this court were to to agree with our argument on D3 and send it back to the immigration judge for that determination, the immigration judge would have a short, discrete task of deciding whether or not that waiver is appropriate. If she decides in her discretion that it's not appropriate, then the U visa option for our client is out the window. But we still have the argument on the proportionality and whether he should be removed at all at any point. So it may be that even though we do that narrow ruling, we end up back here at the end of the day. So yes, that is a way of resolving this matter now. But I would ask the court to address the proportionality argument as well so we don't have serial appeals. Mr. Whitson, the problem that I see with that argument and the problem that I have with the Seventh Circuit's decision is that in 2000, the Congress created the U visa program as part of the Victims of and to hear the various petitions that may follow was with the Justice Department. And then come 2006, the entire U visa program was turned over to the Department of Homeland Security. And the Section D14 gave the Secretary of Homeland Security the authority to determine whether or not there should be a waiver of admissibility. And your client, Mr. Sunday, was there. In fact, he was there after he started at the IJ. They stayed the action to give him a chance to get his U visa. So it seems to me that, you know, at worst, we have an ambiguity here in these statutes as to where the exclusive authority lies. Would you agree with that? I would not, Your Honor. No ambiguity? I would say that there's no ambiguity as to exclusivity. D14 unquestionably grants the authority directly to the Department of Homeland Security. You agree with that? I agree with that. Okay. And we're not seeking... To grant the visa or to grant the waiver? Under D14, it would be the waiver. But the Department of Homeland Security has the discretion to grant the visa itself as well. There's no... That's not even an issue. That's not an issue. No. But D3 is broader than D14. That's right. It specifically says the discretion is granted to the Attorney General. Yeah, but why isn't the argument that it may be broader, but in categories when we're talking about someone who's trying to seek a U visa, that the exclusive authority lies with DHS? Well, that would essentially be an implicit partial repeal... Correct. ...of D3. Correct. So doesn't that question in and of itself create an ambiguity? I think in order to get an implicit repeal, we need more than just, here's an argument for or against. You need to show actual congressional intent to show that. And without that, I don't think it's just a question of deferring to an agency interpretation of an ambiguous statute when there's no congressional intent to show there's an implicit repeal. Remember also that this is a provision that grants the authority to the Attorney General, okay? And they made some changes when the U visa program was established, and other portions of this statute were changed from Attorney General to Department of Homeland Security. This remained the same. They didn't carve out any exception when they added D14 to D3. Well, that's your argument that it didn't carve out any exception. Well, actually, it's the Department of Homeland Security's as well. If the court looks to the letter by which USCIS denied the waiver of inadmissibility, DHS refers both to D3 and to D14. You have an administrative appeal pending. Has that been decided yet? To my knowledge, no, Your Honor. I inquired about that in the past couple of weeks and did not receive an answer to that. But there in page A174 of the record, DHS itself was responding with respect to D3 and D14. So they also acknowledged that D3 applies in the U visa contract. It just seems odd to me that Congress would have allowed a statutory scheme where the Attorney General would get a second bite of the apple when an agency had already had the very same issue in front of them and had decided the question. Your Honor, I would refer the court to actually section D3B of the same statute, which actually provides alternative authority in that case to the Secretary of State. That's a V visa. Is that a V visa, D3B? No, Your Honor. That's just with respect to determining whether there should be a waiver of inadmissibility with respect to a particular provision that has to do with terrorist activity. Okay. Yeah. All right. And for that, there's two alternative ways to get waivers of inadmissibility, through the Secretary of State, through the Secretary of Homeland Security. So the fact that there are two avenues to obtain a waiver of inadmissibility is not so strange. Well, the D3 would be a temporary waiver, wouldn't it? Well, it would be a waiver of inadmissibility that would allow Mr. Sunday to be eligible for the U visa. And the Secretary of Homeland Security still has the discretion whether to grant or deny that, regardless of the waiver. I guess what it boils down to, what you were saying is you want to go to the attorneys to override the agency. It just seems like a statutory scheme that Congress would not have intended. Well, I don't think it's so much as the immigration judge overruling the Department of Homeland Security. It's just two different avenues, the same as in 3B. I don't know how you could not say it was overruling if the Department of Homeland Security said, based on the record, we're not going to grant a waiver of inadmissibility. And then you went to the Justice Department and the immigration judge said, oh, yeah, we're going to return them. That seems incongruous to me. Well, no pun intended. Granted, this statute could be a lot more clear. But it's not the only place where they gave two different grants of authority. And the Department of Homeland Security always has the ability to deny the UFESA in the end, anyhow. And there are various expediency issues that would justify several different agencies having this authority. Okay, Mr. Witson. Can I just ask one question? You sure may. Back to you. You pointed to Section B. I happen to have the statute in front of me. It does mention the Attorney General and the Secretary of Homeland Security in B1, but it says the Secretary of State makes the call. I thought you had said that it allowed jointly, either one of those could grant a waiver. In D3B, Your Honor, the two different agencies that could grant a waiver are, one, the Secretary of State, and two, the Secretary of Homeland Security. And in each case, they consult with the Attorney General. Got it. Thank you. Thank you. All right. Okay, Mr. Witson, we'll have you back on rebuttal. Thank you. Please, thank you. Mr. Oliveira? Wait a minute. Did I pronounce that right? Oliveira. Oliveira. Oliveira. I pronounced it right the first time. May it please this Court, my name is Andrew Oliveira. On behalf of the respondent, the Attorney General, Loretta Lynch. Can you hear me? We can now. We're here because Sunday has an extensive criminal record. One of his convictions renders him removable for committing an aggravated felony. However, when he was putting removal proceedings, he requested continuance for, so that USCIS could adjudicate his U visa application and associated waivers. USCIS adjudicated that application and its associated waivers and issued him two written decisions, one on the U visa and one on the waivers. USCIS explained that Sunday had failed to demonstrate that his positive equities outweighed his negative equities, specifically his lengthy criminal history. Sunday was not happy with that discretionary decision and requests that the Attorney General, specifically through the immigration judge, re-adjudicate that request for a waiver and overrule the USCIS determination. Furthermore- The bail jumping, isn't that the thing to appear? Isn't that the only basis for the aggravated felony? Yes, the bail jumping is the only, is the basis for the aggravated felony. Yeah. But it was not his only conviction. Well, he had some other stuff. Yes, he does have multiple convictions. Furthermore- Which case did he jump bail on? I don't remember off the top of my head, your honor, which specific arrest it was that he jumped bail, but he does, as USCIS pointed out- Was it a jump bail or did his fail show up for an appearance? It's the- You call it bail jumping. That's what the- But it's a failure to appear. Yes, but that's the general term for that aggravated felony provision. It's not the best set of facts for you. I mean, I think there's, it kind of, your adversary has a pretty good argument about the equities here. Well- This guy's out of the country after all these years because he overslept or something. Well, but he did have a hearing. He had the chance to present his equities and USCIS weighed his positive and negative equities and ultimately concluded that he did not merit. And what he's asking for is to completely overrule that decision. He's asking that the immigration judge overrule 100 plus years of Supreme Court precedent because he didn't like the discretionary decision by USCIS. He was afforded the full process that was available to him. It seemed to me he met every other criteria of the new visa except for one. Correct. He was- So he didn't just throw them out the door. And if he didn't get the waiver, except he was inadmissible. Everything else was fine as far as USCIS was concerned, I think, as I recall. Yes, their decision was- The inadmissibility only, that's an issue here. And the question is, who has the jurisdiction to grant him a waiver? Correct. Period. Not whether or not the waiver was correctly granted, that's not an issue. Or who has the ultimate authority, that's not an issue. Well, in essence, though, what Petitioner's arguing is that because he didn't like the outcome that USCIS had, he wants another bite at the apple, which is not what the statute- Why doesn't D3A apply? It seems like they argue that it's a general statute. The Seventh Circuit brought that argument. Why should we disagree with the Seventh Circuit? Well, first off, the Fifth Circuit, as we cited in Trejo, actually came to a contrary conclusion to the Seventh Circuit and held that when USCIS has exclusive jurisdiction over the visa, the associated waivers lie in the exclusive jurisdiction of USCIS. And that same principle applies here. And I would note the Seventh Circuit spends a considerable portion of their time on what it believes to be a problem in the process. But the process here worked out exactly how it's supposed to be and in the most efficient manner possible. Well, that's another issue I'll get to in a minute. But what statutory language supports your argument that the IJ may not consider waivers of inadmissibility under 3A? Well, the- Statutory language. The Enabling Statute and in D14 put the waiver process in the hands of USCIS. You can say, though, you have no statutory language that says the Attorney General does not have- there is no power under D3 to grant a waiver of inadmissibility in this context. Correct. There's no specific language that says the Attorney General does not. However, there is language that says the Secretary of Homeland Security has exclusive jurisdiction over the U visa. We know that. That's not an issue. Right. There's no explicit repeal, if that's what you're asking. There's not even a hint of exclusivity in these statutes. You read them and they both seem to apply, right? Well, but the U visa is exclusively in the hands of the Department of Homeland Security. That's not- anybody's squawking about that. Right. But the waiver here is a part of the requirement. It isn't separate and apart. As Judge Berry noted, he was denied the U visa because he couldn't establish that he was admissible or that his inadmissibility was waived. This waiver is part of the U visa. The decisions were handed down on the same day by the same person. But if you were constructing this in the first instance, wouldn't it make sense to put this kind of thing before an IJ? Your adversary raises this as a policy concern. The IJ knows the case. The IJ understands it has adjudicated matters involving this alien. Does it make sense to put this kind of thing before an IJ? No, it doesn't. In fact, the way Congress set it up is, in fact, the clearest and best way of doing it. There's nothing clear in the statute. I was going to say, clear involving this scenario probably isn't the right choice of words. What's the word the Seventh Circuit would- can't even pronounce- a labyrinthian statute? It is true that immigration law is complex, but in this situation, the process is rather clear. To your point, the immigration judge actually hadn't done a single issue on this case because the U visa was pending. They continued it to allow the U visa to be adjudicated because- It would stay in removal during all that time. Correct. Because the U visa, if granted, would have granted him status. So this isn't a case where the immigration judge had adjudicated everything else. And more important, his record, his whole set of equities was before USCIS and no one is disputing that they are incapable of adjudicating this process. There is no suggestion that they did something procedurally wrong. And I understand, we all understand the legal point here, but if we disagreed with you and sent this back, as Mr. Whitson hinted, one of the choices you'd like to see, we sent this back and the IJ could say, well, we looked at the record before USCIS and we agree with them and we're not going to grant the waiver admissibility. It doesn't necessarily mean because there's two avenues that there's going to be conflict. No, there is a possibility that the immigration judge will deny the waiver. There is also the possibility that he could grant the waiver, then sending the case back to USCIS to see whether USCIS will... Well, wouldn't that be a good result? Wouldn't that be an indication that maybe somebody in the Justice Department said to USCIS, hey, you know, we think the equities lie with Sunday here. Well... I mean, what's wrong with that result? Well, that's not what Congress intended because they put the U visa exclusively in the hands of USCIS. How do you get to that point? I mean, how do you get to the point that in standing here before us, do we owe our deference to the Justice Department's interpretation of this mess? We argue that, yes, you do. And I would just simply point out that what we could stand here and we could debate and we could create what we think is a better process, but that's not our role. Our role is to interpret what Congress has set forth. And it is our opinion that Congress placed exclusive jurisdiction of the U visa in the hands of the Secretary of Homeland Security. So you're saying there was an implicit repeal of D3 by 14? With respect to the U visa, we would argue that for the process of a U visa that only Homeland Security has that authority. To look at a waiver? To look at the waiver for a U visa. Do you think there's an ambiguity? We believe that the statute is clear. That is what the board held. If there is a question of ambiguity, it would be best to send it back to the board to clarify that. It seems to me that the board has. I don't know why you're so concerned about acknowledging an ambiguity. It seems like the board has said we think the Oney Avenue is through D14 and through DHS. That's part of the Justice Department's interpretation. And if our deference applies here, we need to consider what you've decided. Yes. I mean, the board did not say that the D3 waiver doesn't apply. It just simply says that USCIS has the exclusive authority to grant that. The board's decision was well-reasoned and it was consistent with the statute and the regulations. So it wasn't. It outright rejects the LBG case, right? It was outright. I don't know what kind of reasoning was in this short little opinion of the board. Part of the reason I ask you these questions, I'm a little bit at a loss here in trying to figure out how we interpret statutes anymore. Because of the decision in King v. Burwell, the Chief Justice of the Supreme Court said that where there's an ambiguity, you have to look at context. And it seems to me that there's an ambiguity here. And maybe we need to be looking at the context in which D14 was transferred to DHS. And if that's the case, that might support your position. Absolutely, Your Honor. In the context of this case, it's clear as the Fifth Circuit laid out in Trejo that USCIS has exclusive authority. This provision was transferred to DHS, as you mentioned earlier. And USCIS, to make the whole system work, has to have exclusive jurisdiction over both the case and the visa itself. Why is that necessarily so? Well, again, because if USCIS has the first... It's concurrent jurisdiction over the waiver, isn't it? Wouldn't it be? It would be concurrent. But since USCIS has the jurisdiction over the visa itself, would, if we're going to talk context, would more likely the case would just be continued to see if the visa would be granted by USCIS. If it's denied, then the immigration judge would re-adjudicate the application for a waiver under D3. Then should it be positive, it would be sent back to USCIS to see whether they agree, because they also have the authority to revoke a waiver at any time. He would then still need to prove that he merits the U visa as a matter of discretion. You've just articulated the worst possible scenario. I mean, it need not... That would be the rare situation. Well, it need not, but the system that worked here worked exactly as planned. He notified the immigration judge that he had a U visa pending. It was continued. It was adjudicated fully and fairly. You still got an appeal going at USCIS, an administrative appeal going. So that had the IJ and the BIA rule that had jurisdiction exists and this temporary waiver will be granted, it would have gone back to USCIS, and they would have done whatever they're going to do on the U visa application. I would just note my time is up, but I will answer your question in any other you have. Okay. Well, technically, the waiver application is not appealable. He's appealing the denial of the U visa. The Seventh Circuit thought it was, because there was an administrative appeal pending in that case, too. Correct. And they decided on the merits that there was jurisdiction. And we believe, as the board did, that the Seventh Circuit's decision is not persuasive in light of the language of the statute. Mr. Oliverio, let me ask you just one question about proportionality. Of course. Okay. Which is a separate argument here. Yes. And in light of Padilla versus Kentucky, how can, you know, we have to read, we have to read the thinking of the Supreme Court, which is often very difficult for us to do. And your argument might be, your argument is, I think, that we need to defer to the Supreme Court on this question. But in light of Padilla versus Kentucky, how can we not say that removal was, in today's jurisprudence, not possible? Punishment. Well, the first argument I was going to make is that the Supreme Court didn't actually hold that it was a punishment. And secondly, if the Supreme Court were to do so, they would need to do so unequivocally. That we're talking 100 plus years of consistent jurisprudence. And I don't think we should disregard that on, you know, language in dicta that still isn't clear. That they intend to apply all of the criminal protections to immigration proceedings. What Petitioner is asking for is a radical departure from anything that this court and the Supreme Court have ever done. And we would simply say that without clear guidance from the Supreme Court, there's no reason to... So your answer is, I think you answered it, but you don't think Padilla versus Kentucky changed the jurisprudential question that we have in front of us? No, and I would refer to the Eyde case that we cited, which reaffirmed that removal proceedings are civil proceedings and not criminal. All right. Okay. If there are no further questions, we ask that this court affirm the decision of the board. Thank you. All right. Mr. Whitson? Thank you, Your Honor. As to exclusivity, there is no ambiguity in the statute, although there are quite a few ambiguities in the statute. But D-3 by its term applies here. It's only ambiguous if you think you can't have two separate avenues for this consideration. Yet USCIS, part of the Department of Homeland Security, obviously believes that there are two different avenues. It said so in Mr. Sunday's request, and they said so in their regulations. D-3B also shows different avenues. So the fact that you can have different avenues, that shows that there is no exclusivity. D-3 allows the AG. D-14 allows Department of Homeland Security. Both apply here, and we should enforce D-3 to allow the immigration judge to make that decision. Are we required to give our deference to the Justice Department's interpretation of this question? I don't believe there's any ambiguity to this statute, Your Honor, as far as exclusivity goes. There are standards for implied repeal that we discuss in our brief. They're simply not even close to being that. So your answer to that would be no. Yes, correct. Okay. With respect to your last question, and Justice Scaris asked a question, and the response was he had a hearing, as if that was sufficient to address the constitutional issues in this case. We're not asking for any radical departure here. We're asking for the same logical result from Austin, Troop, State Farm, Gore. We use this court's test in our way. Subjective intent, first element, mixed results on the legislative record. Objective intent, we have the reaction here. The punishment is defined by the conviction. A clear nexus. There's no discretionary relief, and there's a permanent bar to reentry. That smacks of retribution and deterrence. And then the effects test, which alone can satisfy the test. If this case doesn't do it, I don't know of any case that can. Thank you, Your Honor. Thank you, Mr. Whitson. We thank both counsel for excellent work on this case, and particularly want to thank Mr. Whitson, you and your firm, Schneider Harrison, for taking this matter on a pro bono basis. Thank you. And we'll take the matter under advisement.